# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KVAERNER NORTH AMERICAN CONSTRUCTION INC. Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 15-1460 ) |
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, Defendant. | ) ) ) ) |

## I. RECOMMENDATION

It is respectfully recommended that the Motion for Partial Summary Judgment filed by Allianz Global Risks US Insurance Company ("Allianz") [ECF No. 38] be granted, and Plaintiff Kvaerner North American Construction Inc. ("Kvaerner")'s Motion for Summary Judgment on Choice of Law Applicable to Bad-Faith Claims [ECF No. 42] be denied, and that Kvaerner be granted leave to amend its Complaint to assert claims of bad faith under Pennsylvania law.

## II. REPORT

### A. Relevant Procedural and Factual History

The Complaint in this action was filed on November 6, 2015 [ECF No.1]. Fact discovery is due to end by February 28, 2017. This lawsuit arises out of two insurance claims made by Kvaerner for losses allegedly occurring during the course of construction of a coal fired electric generation plant in West Virginia. At the request of the parties, on November 2, 2016, the Court entered as order setting a briefing schedule on the choice of law in the bad faith portion of the action. [ECF No. 37].

The following facts are not in dispute and are relevant to the choice of law decision. Kvaerner, as constructor, and Longview Power, LLC ("Longview"), as owner, entered into a

contract for Kvaerner to, among other things, construct an approximately 695-megawatt (net) supercritical coal fired electric generation plant, known as the Longview Power Plant, in Maidsville, West Virginia. Kvaerner is a corporation organized under the laws of the State of Delaware, with its principal place of business and headquarters located in Canonsburg, Pennsylvania. Allianz is an insurance company organized under the laws of the State of Illinois, with its principal place of business located in Illinois. Allianz is licensed to conduct business, and does conduct business, in Pennsylvania. Allianz issued a Construction "All Risks" and Advanced Loss of Profits Insurance policy for the Longview Power Project, bearing policy number ATO 3008062 (hereinafter "the Policy"). Kvaerner, through its predecessor, Aker Kvaerner Songer, Inc., is a "Named Insured" under the Policy. The Policy contains a "Governing Law" clause which provides that "[t]he laws of the State of New Jersey shall govern all matters concerning the construction and interpretation of this policy.[1]

Effective May 15, 2008, the Policy required that all notices and correspondence to *Allianz*, including premiums and notices of loss, be mailed to Aon Risk Services Central, Inc. at a Pennsylvania address. The Policy required that all claim communications, notices, and other correspondence to *Kvaerner* be mailed to its headquarters in Pennsylvania.[2] Allianz denied coverage for one of the insurance claims at issue by letter via email dated August 23, 2011, sent to Bill Schildnecht, Kvaerner's senior contract manager, at Kvaerner's headquarters in

---

[1] In addition to other coverages, the Policy includes an Endorsement Number 2, which provides insurance coverage for "Aker Kvaerner Songer Inc.'s 'Soft Costs'" subject to the terms, conditions and waiting period of that Endorsement and the referenced sublimit of liability. As provided in Endorsement No. 2, "soft costs" include, among other costs, "[a]dditional legal and accounting fees ... [and] [a]dditional amounts by which the cost of the permanent or temporary works uncommenced at the date of the physical loss or damage shall exceed the cost to the contractor which would have been incurred but for any delay caused by the physical loss or damage which become necessary as a direct result of an insured loss and which are incurred by [Kvaerner] over and above the projected costs of the building or structure."

[2] Kvaerner was not the sole insured under the Policy and, therefore, communications from Allianz would not go solely to Kvaerner in Pennsylvania, but were also to be sent as appropriate to Longview Power, LLC in Massachusetts and Siemen Power Generation, Inc., in Florida.

Canonsburg, Pennsylvania.

The damage complained of occurred at the Longview Power Plant in West Virginia. Kvaerner seeks insurance coverage related to two separate claims based on physical damage and resulting delay that occurred at the Project site.   The first claim, the Wachs Claim, involves damage discovered in 2010 and allegedly caused by Kvaerner's welding subcontractor, Wachs Technical Services, Ltd. ("Wachs"), which resulted in physical damage to tubes and components in the Project's boiler. Compl ¶¶ 20-33. The second claim, the Boiler Tube Cracking Claim, relates to physical damage in the form of leaks and cracks in welds and extending into the tubes in the nose of the boiler. Id. ¶¶ 34-47. Allianz conducted its investigation of the claims in West Virginia.  Specifically, with respect to the Wachs Claim, representatives from Kvaerner and Allianz met on at least four  occasions at the Plant in West Virginia.  No meetings were held at Kvaerner's place of business in Canonsburg, Pennsylvania.  With respect to the Boiler Tube Cracking Claim, Allianz representatives visited the Plant in West Virginia on multiple occasions to investigate the claim.  No meetings with respect to the Boiler Tube Cracking Claim were held at Kvaerner's place of business in Canonsburg, Pennsylvania.

Count I alleges breach of contract related to the Wachs Claim, including the implied covenant of good faith and fair dealing;  Count II alleges breach of contract related to the Boiler Tube Leaking/Cracking Claim. These Counts are not at issue in the pending motion.

 At Count III Kvaerner asserts common law bad-faith claims against Allianz under West Virginia law, related to both the Wachs Claim and the Boiler Tube Cracking Claim.  Count IV asserts statutory bad faith under West Virginia law, related solely to the Wachs Claim. Kvaerner argues its pleading of West Virginia law is based on the significant connection between Allianz's handling of the claims and the Project site in West Virginia. In the alternative, Kvaerner also has

alleged a bad-faith claim under New Jersey law, at Count V, solely related to the Wachs Claim, because, although Kvaerner does not believe it applies to the bad-faith claims, the Policy does contain a "Governing Law" provision. (Kvaerner disputes that the policy's governing law provision applies to claim adjustments or non-contractual causes of action.)

The matter before us has been fully briefed and is ripe for disposition. We have diversity jurisdiction pursuant to 28 U.S.C. 1332.

### B. Discussion

In diversity cases, federal courts follow the conflict-of-laws rules of the State in which the court sits. *Klaxon v. Stentor*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). Pennsylvania applies a "flexible, 'interests/contacts' methodology to contract choice-of-law questions." *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America,* 693 F.3d 417, 432 (3d Cir. 2012) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226–27 (3d Cir. 2007)).

The first step under Pennsylvania's choice of law framework is to determine whether there is an actual or true conflict between the potentially applicable laws. The parties agree that an actual conflict exists between Pennsylvania and West Virginia's bad-faith laws. [ECF No. 39 at 4, No. 49 at 2]. We agree. *Compare Kilmer v. Connecticut Indemnity Co.*, 189 F.Supp.2d 237 (M.D. Pa. 2002) (insured can recover attorney's fees and costs only if it has been shown by clear and convincing evidence the insurer did not have a reasonable basis to deny benefits and insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim") *with Hayseeds, Inc. v. State Farm Fire & Cas. Co*., 352 S.E.2d 73, 80-81 (W. Va. 1986) (attorney's fees recoverable so long as policy holder "substantially prevailed").

Given that a true conflict exists, we "determine which state has the greater interest in the

application of its law." *Hammersmith*, 480 F.3d at 231 (quotation marks omitted). To do so, we use a methodology that combines the approaches of the Restatement (Second) of Conflicts of Law and governmental interest analysis. *Id.* We begin "the analysis by assessing each state's contacts under the Second Restatement," and "turn to § 188(2) (the general provision governing contracts), which directs us to take the following contacts into account: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 232–33.11 This requires "more than a mere counting of contacts." *Id*. at 231 (quotation marks omitted). Instead, "we must weigh the contacts on a qualitative scale according to the policies and interests underlying the particular issue." *Id.* (quotation marks omitted).

In *Kilmer v. Connecticut Indemnity Co*., the court held that Pennsylvania law applied as to an insurance bad faith claim brought by a Pennsylvania couple against a Connecticut insurer, after a fire destroyed the couple's New York ski lodge. The court cited to § 193 of the Restatement (Second) of Conflicts of Law. That section, entitled "Contracts of Fire, Surety or Casualty Insurance," provides as follows:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ...to the transaction and the parties, in which event the local law of the other state will be applied.

The Court noted that although the location of the insured risk (the New York ski lodge) was undisputed, other factors weighed in favor of application of the law of Pennsylvania, the home state of the insureds. The court listed those factors:

5

> (1) the [plaintiffs] are both domiciled and reside in Pennsylvania;
> (2) the insurance policy in question was negotiated in Pennsylvania;
> (3) the agent through whom the policy was issued is located in Pennsylvania;
> (4) the premium was paid in Pennsylvania;
> (5) the insurance company who issued the policy is licensed in Pennsylvania;
> (6) the insurance company who issued the policy is competing with other insurance companies domiciled and doing business in Pennsylvania; and
> (7) the [plaintiffs] naturally expected the laws of Pennsylvania to protect them.

"Because the protection of insured parties is the primary public policy behind laws governing duties owed by an insurer to an insured," Pennsylvania law applied regardless of the out-of-state location of the subject property. *Id.* at 245. As the court continued, "[t]he Third Circuit has made clear that the protection of insured parties is the primary public policy underlying laws governing duties owed by an insurer to an insured." *Id.* at 246. In particular, the court explained that "with regard to Pennsylvania's bad faith statute, courts have held that the policy behind [it] . . . is that the Pennsylvania legislature was concerned about protecting its own residents/insured from overreaching insurance companies." *Id.* at 246-47, *citing Celebre v. Windsor–Mount Joy Mut. Ins. Co.,* 1994 WL 13840, *2 (E.D. Pa. Jan. 14, 1994)) (*citing Thomson v. Prudential Prop. & Cas. Ins. Co.*, 1992 WL 38132, *4 (E.D. Pa. Feb. 20, 1992)) ("Pennsylvania has a great interest in protecting its residents from possible misconduct of insurance carriers operating within its borders."). As such, it concluded that "under its conflict of laws principles, in order to ensure that the insured parties are protected from the bad faith of an insurer, Pennsylvania would apply its own local law on the issue of whether [the insurer] acted in bad faith in its handling of [plaintiffs'] insurance claim." *Id.* at 247.

After *Kilmer,* other courts followed suit, and consider the primary factor to be considered is the state of residence of the insured, guided by the policy motive that the insured's home state enjoys a significant interest in ensuring its citizens' rights vis-à-vis those of insurers. *Westfield Insurance Company v. Icon Legacy Custom Modular Homes,* 2016 WL 4502456 (M.D. Pa.

August 29, 2016).

It is undisputed that Kvaerner's principle place of business is in Pennsylvania and all relevant claims communications giving rise to the allegations of bad faith were received by Kvaerner in Pennsylvania, as required by the Policy. Allianz is licensed to conduct business in Pennsylvania, and loss payments, if any, were to be made to Kvaerner in Pennsylvania. [ECF No. 41 at 2]. Pennsylvania is the state where the failure to receive the allegedly expected benefits would be felt. Furthermore, we do not see how New Jersey[3] would have much interest in offering protection to Kvaerner under the facts and circumstances of this case and a fair reading of the policy and case law. Accordingly, the substantive law of Pennsylvania should apply to the bad faith claims set forth in the Complaint.

Anticipating that the Court may so rule, Kvaerner seeks leave to amend its Complaint to assert its claims of bad faith under Pennsylvania law. 42 Pa. Stat. Ann. § 8371. Federal Rule of Civil Procedure 15 provides that when a responsive pleading has been filed, a "party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 counsels courts to "freely give leave [to amend a complaint] when justice so requires." *Id.* Nonetheless, a district court may deny leave to amend a complaint if the amendment has been unduly delayed, would unduly prejudice the nonmoving party, or would be futile. *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1203 (3d Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The burden is on the nonmoving party to show that there are grounds for denying leave to amend. *Chancellor v. Pottsgrove Sch. Dist.,* 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007). Allianz has not expressed an objection to the requested amendment, and even so such

---

[3] The "governing Law" provision is narrowly tailored to the "construction and interpretation" of the Policy and does not embrace all aspect of the legal relationship such that it would extend to non-contractual, tort claims, including the claim adjustment process. *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa.*, Inc., 848 F. Supp. 569, 576 (E.D. Pa. 1994); *see also Zavecz v. Yield Dynamics, Inc.*, 179 Fed. App'x 116, 120 (3d Cir. 2006).

an objection would be overruled.

### D. Conclusion

Therefore it is respectfully recommended that the Motion for Partial Summary Judgment filed by Allianz Global Risks US Insurance Company ("Allianz") [ECF No. 38] be granted, and Plaintiff Kvaerner North American Construction Inc.'s Motion for Summary Judgment on Choice of Law Applicable to Bad-Faith Claims [ECF No. 42] be denied, and that Kvaerner be granted leave to amend its Complaint to assert claims of bad faith under Pennsylvania law.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed. R. Civ. P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Date: January 26, 2017

cc: record counsel